WARD v. PAROLE BOARD, DEPARTMENT OF CORRECTIONS

1. PARDON AND PAROLE—REVOCATION OF PAROLE—AVAILABILITY OF PAROLEE.

   A paroled prisoner charged with violation of his parole was not available to the parole board for conduct of a hearing on the charge while he was confined in a jail on a charge of armed robbery.

2. PARDON AND PAROLE—REVOCATION OF PAROLE—AVAILABILITY OF PAROLEE—BURDEN.

   A paroled prisoner charged with violation of his parole has the burden of making himself available to the parole board for conduct of a hearing on the charge by somehow securing his release from restraint on other criminal charges before he can complain of delay in conducting the hearing.

3. PARDON AND PAROLE—REVOCATION OF PAROLE—WARRANT—EXECUTION—JURISDICTION.

   The parole board does not lose jurisdiction over a paroled prisoner charged with violation of his parole by deferring execution of a warrant for parole violation until termination of other pending criminal proceedings against the prisoner.

4. PARDON AND PAROLE—REVOCATION OF PAROLE—WARRANT—EXECUTION.

   A paroled prisoner charged with violation of his parole is entitled to have service of the warrant for parole violation and a hearing conducted within a reasonable time after issuance of the warrant.

Original action in the Court of Appeals. Submitted Division 2 June 8, 1971, at Lansing. (Docket No. 10121.) Decided August 23, 1971. Leave to appeal denied, 386 Mich 767.

REFERENCE FOR POINTS IN HEADNOTES
[1-4] 59 Am Jur 2d, Pardon and Parole §§ 92, 93, 95.

Complaint for superintending control by John L. Ward against the Parole Board of the Department of Corrections to compel his release from prison. Complaint dismissed.

*Robert W. Larin,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stewart H. Freeman,* Assistant Solicitor General, for defendant.

Before: DANHOF, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J.  This case is before us upon a petition for superintending control directed to the Parole Board of the Department of Corrections, ordering it to show cause why appellant, who has been returned to the branch prison in Jackson and remains in confinement there, should not be released.

Intentionally, we disregard the question of the propriety of superintending control in the nature of mandamus by which to seek relief, in order to get to the merits of the claim.

Appellant's parole status rivals that of the train that caused Finnegan, the roadmaster, so much trouble by derailments that he dispatched the classic telegram to his supervisor: "Off again, on again, gone again.  Finnegan."

We can chronologize petitioner's off's and on's, but unfortunately we cannot be quite as succinct (or poetic).

1. February 19, 1963—Convicted of breaking and entering in the night.  (MCLA § 750.11 [Stat Ann 1971 Cum Supp § 28.305]).  Sentence: 3 to 15 years.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

2. Paroled, effective January 29, 1965.

3. Found guilty of leaving the state without authorization, parole revoked. (Date not supplied by record.)

4. Reinstated to parole status effective December 20, 1966.

5. Left the state again February 18, 1966. Whereabouts unknown.

6. March 6, 1967—Arrested in Oakland County. The parties differ as to the basis of arrest, although another parole violation warrant was authorized March 5 and issued March 6. It was intentionally not executed because: * * *

7. March 13, 1967—Petitioner charged with armed robbery in Oakland County.

8. April, 1967—Bound over to circuit court; bond fixed at $3,000, unfurnished. (Allegedly at defendant's option.)

9. April, 1967 and August 7, 1967—"Informal" or at least oral requests for parole violation hearing while in custody and while armed robbery charge impended.

10. August 15, 1967—Parole board refused to take action upon "requests" for parole violation hearing until disposition of the armed robbery charge.

11. October 4, 1967, petitioner acquitted on armed robbery charge.

12. October 3, 1967—Parole violation warrant issued March 6, 1967, served.

13. October 16, 1967—Petitioner served with notice of rights, notice of hearing, and statement of charges of parole violation.

14. November 1, 1967—Parole violation hearing at Jackson prison. (Petitioner claims procedural irregularities and due process infirmities.)

15. December 6, 1967—Parole board found violation of parole; prior parole order rescinded. Matter continued for one year.

16. December 10, 1968—Petitioner granted *another* parole. (Emphasis supplied.)

17. March 11, 1969—Parole violation warrant issued. Plaintiff returned to Michigan after extradition proceeding and on order of the Governor of California.

18. June 29, 1970—Petitioner entered a plea of guilty to parole violation.

19. Petitioner reconfined state prison in Jackson.

20. August 28, 1970—Petitioner seeks mandamus to order his release.

21. This Court issues an order to show cause why relief sought should not be granted.

22. Oral argument, Division Two.

Rather than try to dispose of the case within the strict letter of the stated questions on appeal, we shall try to fuse them into a single statement of the contentions of the petitioner and the respondent.

Basically, the thrust of the petitioner's argument is that somewhere between item 6 and item 10, the parole board was obligated to afford him a hearing on the limited question of the alleged violation of his parole (other than commission of, and conviction of, a misdemeanor or a felony) because he had not yet been confined on the armed robbery charges of which he was later acquitted. His further contention is that by failure so to do the board lost jurisdiction or waived its right to proceed on the alleged parole violation after his acquittal.

Hence, he argues, all subsequent proceedings before the board were a nullity and that since his

present confinement stems from this claimed infirmity, the later plea to parole violation was legally meaningless because legally he was not on parole at all and he could not plead guilty to violation of a parole that did not in law really exist.

In all, petitioner claims some 8 months elapsed between the authorization of the warrant for parole violation, March 5, 1967, and the hearing, November 1, 1967.

Not so, says the Attorney General. The state contends the board did respond to the request for a hearing (which request it also contends was inadequately made) some 7 days after the parole violation warrant was authorized and issued, but not served; that once petitioner was confined on the armed robbery charge, the state could not acquire physical control of him and conduct a hearing because he was "unavailable" and under the jurisdiction of a court, which jurisdiction superseded administrative right to custody.

What this whole case amounts to in the last analysis is, what does "available" mean and whose burden is it to make an alleged parole violator "available" when he is confined for an offense other than the alleged parole violation?

It is all to the good that the statute has been amended to clarify, at least, the time from which the 30-day period within which a hearing must be held begins to run. The time now begins to run 30 days after his "return to a state penal institution".[1] To this extent then the question of whether the 30 days has run as it arises in this case cannot reoccur. We hold here that the 30-day period did not expire because, though a warrant for parole

---

[1] MCLA § 791.240a (Stat Ann 1971 Cum Supp § 28.2310[1]).

violation was issued March 6, petitioner became restrained and confined on the armed robbery charge on March 13 and thus was "unavailable" to the parole board.

So we return to what we think is the basic question; namely, when a situation arises where a parolee is confined on a separate criminal charge and demands a hearing on an alleged parole violation, does the state have to seek judicial process or judicial consent to assure his physical presence in the state penal institution from which he was paroled in order to conduct a hearing? Or, is his "availability", that is, his release from restraint, his burden either by furnishing bail or obtaining his liberty by whatever other means possible?

In the interest of public policy and the practical administration of justice and for what we regard as sound legal reasons, we hold it is the burden of the person on parole. We further hold that the parole board does not lose jurisdiction over a parolee by deferring execution of a warrant for parole violation until the termination of other impending criminal proceedings.

The reason for this holding is that if the parolee is convicted of a felony or misdemeanor his parole is *ipso facto* revoked. The hearing on alleged violations other than the above becomes pointless.

If, however, as here, the parolee is acquitted, he remains entitled to the statutorily mandated hearing on the other alleged violations, which must comport with due process in all respects. In so holding, we follow to a degree what we consider to be well-reasoned precedent of the United States Fifth, Sixth and Eighth Circuit Courts of Appeal, which although not binding upon us are certainly entitled to respectful consideration.

"A parole violator warrant is not required to be executed immediately upon issuance, but may be executed at any time before expiration of sentence." *Hickman* v. *United States* (CA 5, 1970), 432 F2d 414, 415.

See also *Savage* v. *United States Parole Board* (CA 6, 1970), 422 F2d 1248, and *Petition of Castaldi* (CA 8, 1970), 428 F2d 371.

We have not been cited any precise holding of our Supreme Court which is dispositive of the question, nor has our independent research produced one. To this extent then, this is a question of first impression.

We said earlier we follow the cited Federal precedent to a degree. It was not idly said. We are not willing to hold that under all circumstances, and in all cases, the Damoclean warrant once issued can be served at *any* time prior to expiration of sentence. If there is no reason for deferring service surely the parolee is entitled to have service made and his hearing conducted within a reasonable time after the issuance of the warrant. We hazard the view that appellate review would inquire whether prejudice to the parolee resulted from the indefinite deferring of service and of hearing.

The final contention of the petitioner is that the November 1, 1967, parole violation was statutorily and indeed constitutionally infirm by reason of the admission of hearsay testimony and lack of confrontation. We have reviewed with care petitioner's exhibit No. 7, entitled "Total Transcript of Witness for Parole Board". There are some irregularities. There was certain hearsay testimony admitted. However, as to counts 1 and 5 the parole officer testified from personal knowledge and his testimony sustains the finding of the board. The hearsay may not be deemed to have been controlling.

For the reasons hereinbefore discussed, the order to show cause is dismissed as is the petition for superintending control.

All concurred.